UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| JOHN DOE[1],<br><br>    Plaintiff,<br><br> -against-<br><br>FULLSTACK ACADEMY, INC., DAVID YANG<br>and GABRIEL LEBEC,<br><br>    Defendants. | Civil Action No. _____<br><br>**COMPLAINT**<br><br>**Jury Trial Demanded** |

   Plaintiff, JOHN DOE[1] ("Doe" or "Plaintiff"), by and through his undersigned counsel, sues defendants, FULLSTACK ACADEMY, INC., an educational institution located in New York State ("Fullstack"), DAVID YANG, in his individual capacity ("Yang") and GABRIEL LEBEC, in his individual capacity ("Lebec") (hereinafter collectively referred to as "Defendants"), and seeks damages and any other and further relief that this Court deems just and proper, and states as follows:

**PRELIMINARY STATEMENT**

   1.  Plaintiff brings this action against Defendants for their unlawful discrimination and retaliation against Plaintiff based on his disabilities, in violation of the Americans with Disabilities Act, 42 U.S.C. §§ 12101 *et seq.*, the New York State Human Rights Law, N.Y. Executive Law §§ 290 et seq. and the New York City Human Rights Law, N.Y. City Administrative Code §§ 8-101 et seq. Plaintiff also brings claims for breach of contract, breach of the implied covenant of good faith and fair dealing, and promissory estoppel.

---

 [1] Plaintiff has filed, contemporaneously with this Complaint, a Motion to proceed pseudonymously.

## PARTIES

2.      Plaintiff is, and all times relevant hereto, was a resident of Queens County, New York.

3.      Upon information and belief, at all times relevant hereto, defendant Fullstack Academy is, and at all times relevant hereto, was an educational institution conducting business in the State of New York.

4.      Upon information and belief, Yang is an individual who conducts business in New York County, New York. Yang is, and at all times relevant hereto, was the co-founder of Fullstack Academy.

5.      Upon information and belief, Lebec is an individual who conducts business in New York County, New York.  Lebec is, and at all times relevant hereto, was an instructor at Fullstack Academy.

## JURISDICTION

6.      This Court has federal question jurisdiction pursuant to 28 U.S.C. § 1331 because Plaintiff states claims arising under federal law.  This court has jurisdiction over the state law claims pursuant to 28 U.S.C. § 1367 because the state law claims are so closely related to the federal law claims as to form the same case or controversy under Article III of the U.S. Constitution.

7.      This Court has personal jurisdiction over all Defendants because all Defendants conduct business in New York County, New York, and the acts or omissions giving rise to this Complaint occurred in New York County, New York.

8.      All conditions precedent to the filing of this action have occurred, accrued, or been waived as a matter of law.

**VENUE**

9.      Pursuant to 28 U.S.C. § 1391, venue for this action properly lies in the U.S. District Court for the Southern District of New York because the acts or omissions giving rise to this Complaint occurred in this district.

**GENERAL ALLEGATIONS**

10.     Upon information and belief, as of 2017, there are only 95 full-time coding institutions across 40 states, and Fullstack is one of 23 coding schools located in the state of New York.

11.     Upon information and belief, Fullstack voluntarily adopted guidelines or "key practices" published by the New York City Department of Small Business Services ("SBS") as part of New York City's Tech Talent Pipeline initiative.[2]

12.     Key practices include, but are not limited to, the following: (i) ensure participants have the tools needed to succeed in job searches; (ii) ensure students have access to continued instructional support and personal coaching; (iii) hire at least one experienced social service or other qualified professional to support students through training and help them succeed; (iv) assign one student experience specialist to coordinate amongst all key staff; (v) cultivate a supportive community through cohort-based training to provide a built-in network for networking, hackathons and study groups; (vi) proactively provide targeted support in areas where students are struggling; and (vii) help students gain experience by helping participants secure paid internships, shadowing experiences, hackathons, site visits to tech companies,

---

[2] NYC Tech Talent Pipeline - Key Practices for Accelerated Tech Training
https://static1.squarespace.com/static/54d3a0dee4b026182d00678f/t/5a1448e471c10bfdba747488/1511278830800/TTP+Provider+Brief_final-digital.pdf

participation in the New York City tech community, and mentoring opportunities with current industry professionals.

13.     Fullstack offers two types of courses: immersive and non-immersive.  Fullstack's non-immersive courses are part-time and purportedly designed to introduce students to web development.  Fullstack's immersive programs are purportedly designed to prepare students for a career in web development.

14.     Plaintiff sought to apply to Fullstack in 2017.

15.     Plaintiff suffers from a substantial hearing disability in that he has diminished auditory senses and is required to wear two hearing-aids.  Plaintiff also suffers from mental health disabilities, including anxiety.

16.     On or about August 24, 2017, Plaintiff enrolled in Fullstack's online JavaScript Jumpstart course, a "boot camp" preparatory program.  Plaintiff successfully completed the boot camp program.

17.     On or about September 13, 2017, Plaintiff initiated the formal admission process to enter Fullstack's immersive program.  Plaintiff submitted an online application and completed an online technical skills assessment.

18.     Fullstack scheduled a one-on-one interview via Skype with Plaintiff to complete his admission to the program.  However, on the eve of his interview, one of Plaintiff's hearing aids malfunctioned.  Plaintiff informed Fullstack of his hearing disability and requested an in-person interview.

19.     On October 2, 2017, Plaintiff was given instructions from Fullstack and had an in-person interview.  During the interview, Plaintiff inquired if Fullstack had an assisted listening

device and Jeremy Wicks, a teaching fellow at Fullstack, informed Plaintiff that he "did not know". Nevertheless, Plaintiff passed his interview and was accepted into Fullstack.

20.     Fullstack, at all times relevant hereto, had in force a certain Catalog, Version 1.1, dated January 11, 2016 (the "Policies").

21.     The Policies upon which Plaintiff relied, and those recited below, constituted customs and policies of Fullstack that were required and intended to be enforced equally among all students, and in a non-discriminatory manner.

22.     Page 4 of the Policies asserts that its "campus is fully ADA (the Americans with Disabilities Act) compliant." This promise made to Plaintiff turned out to be false.

23.     Page 24 of the Policies asserts that "[l]icensed private career schools, such as Fullstack Academy, offer curricula measured in clock hours, not credit hours. Certificates of Completion are issued to students who meet clock hour requirements." As set forth herein below, despite the fact that Plaintiff met his clock hour requirements, Fullstack has failed to provide him with a Certificate of Completion.

24.     Page 18 of the Policies asserts that "[s]tudents are graded on a pass/fail basis." The Policies further assert that to receive a passing grade, a student must: (i) receive a passing grade of 80% of all checkpoint assessments; (ii) maintain 95% attendance in his or her classes for the duration of his or her enrollment; and (iii) complete all course projects.

25.     Page 19 of the Policies asserts that "[i]f a student's conduct or academic progress falls below an acceptable level at any time while enrolled at Fullstack, a performance improvement plan will be enforced to help the student improve." The Policies further assert that "[p]articipation in the performance improvement plan program is a second chance. If student

performance in subsequent projects and assessments does not improve to passing, we reserve the right to dismiss the student from the course."

26.     Plaintiff relied on these assurances and promises when enrolling in Fullstack and in paying Fullstack's tuition in the amount of $17,610.

27.     Plaintiff completed the first phase of his enrollment at Fullstack successfully. However, during that initial phase, the closed captioning used by Fullstack did not completely capture the technological words used by Fullstack professors, nor did it capture all student questions asked during the course.   Plaintiff complained about the closed captioning system several times to his instructor, Scott D'Alessandro, his Student Experience specialist, Derrick Foust, the Director of Product Management, Mark Davis, and Fullstack's co-founder, David Yang, to no avail.

28.     Plaintiff began his "junior phase" at Fullstack on or about January 8, 2018.

29.     At the commencement of Plaintiff's junior phase at Fullstack, he contacted the Student Experience specialists to attempt to coordinate his arrangements for learning. In light of Fullstack's lack of clarity about whether it had an assisted learning device, Plaintiff advised the Student Experience specialists that he bought a special microphone. He requested that Plaintiff's professors use the microphone during class so that Plaintiff could better hear instruction.

30.     In addition, Fullstack classes allowed free student participation, such that other students could simply ask questions aloud at any time and professors would provide answers. Plaintiff requested that his professors repeat student questions into the microphone so that Plaintiff could hear and understand both the question and response.

31.     During Plaintiff's junior phase, Lebec was Plaintiff's primary instructor.  When Lebec taught classes, he stood in the back row of the lecture room, despite being aware of Plaintiff's auditory disability.

32.     As the junior phase began, Lebec would repeat the majority of student questions without Plaintiff prompting.  However, as the junior phase went on, Lebec stopped repeating questions into Plaintiff's microphone unless Plaintiff made a circling motion with his hand or verbally asked Lebec to repeat the question.

33.     However, after a while, Plaintiff was unable to even signal Lebec to repeat the question because Lebec purposefully ignored Plaintiff's request that all student questions are repeated into the microphone.

34.     On January 12, 2018, Plaintiff had a mandatory meeting with his Student Experience specialist, Derrick Foust.  During the meeting, Plaintiff explained his frustration with not hearing student questions and Lebec not using the microphone to repeat student questions.

35.     Plaintiff further informed Foust that the closed captioning being used by Fullstack on required videos was not properly capturing all spoken words (and in some instances, not capturing student questions at all), especially technical words.

36.     During Plaintiff's meeting with Foust, Plaintiff also explained that he suffers from mental health disabilities, including anxiety.  Plaintiff informed Foust that Plaintiff was on restricted medication requiring monthly authorization from his psychiatrist for his mental health disability.  Plaintiff requested a private area on Fullstack's campus so that he could participate in video therapy sessions with his psychiatrist during lunch breaks.  Foust agreed to provide Plaintiff with a private area, and Plaintiff participated in at least two video therapy sessions in that area.

37.     By February 6, 2018, Plaintiff saw no changes in Fullstack's treatment of his disabilities, despite his candid conversation with Foust.  Plaintiff expressed his frustration and Foust arranged for a meeting between himself, Plaintiff and Yang.

38.     Plaintiff, Foust and Yang met on February 9, 2018.  During the meeting, Plaintiff once again expressed his frustration that Fullstack, despite holding itself out as ADA compliant, was not providing him with reasonable accommodations for his disability.  Specifically, Plaintiff expressed his frustration that Lebec and other professors refused to repeat student questions into Plaintiff's microphone, and that Lebec stood in the back of lectures, making it even more difficult for Plaintiff to interact with him.

39.     Plaintiff also complained that he was feeling left out of the community building events due to his hearing disability. For example, Fullstack held regular school gatherings at a local bar on Friday nights, which was isolating for Plaintiff because his hearing disability precluded him from hearing multiple conversations at one time, so he was unable to participate. Also, each time the class got into a circle of 45-50 people, Plaintiff was unable to hear any of the students speaking unless they passed the microphone around, which did not occur. Plaintiff felt further excluded from the community building events since there was no accommodation made for his anxiety either.

40.     In the February 9 meeting, Foust suggested that Plaintiff's professors pass the microphone around to students so that students could ask questions directly into the microphone. There is no indication that the suggestion was made directly to Plaintiff's professors. No other suggestions were made.

41.     Rather than provide Plaintiff with the reasonable accommodations requested, Foust and Yang attempted to persuade Plaintiff into transferring to Fullstack's online program.

However, Plaintiff would have lost credit for all previously completed work, and his ability to graduate would be delayed by at least seven weeks if he transferred to the online option. Accordingly, Plaintiff did not accept this offer.

42.     After the meeting with Yang and Foust, Plaintiff attended a lecture at Fullstack on the next step in his progress, the "senior phase," which included Fullstack's graduation requirements.   During this lecture, Plaintiff and other Fullstack students in attendance were shown slides of projects, the completion of which was required for graduation.   The projects included: "Grace Shopper," "Stackathon," and "Capstone."

43.     In one of the slides, students were informed that Fullstack organized the students' "Grace Shoppers" teams regardless of preference. On the "Community Norms" slide, students were instructed to "trust the process." Students were told what Fullstack's "Hiring Teams" do for their students. Fullstack committed to providing its students with invaluable networking, alumni connections, and job placement opportunities. Students were also shown a slide concerning "Launch Day." During that slide, students were told that they must present all projects in order to participate.

44.     On or about February 16, 2018, Plaintiff successfully completed the final exam of his junior phase and his academic progress was flourishing, notwithstanding Fullstack's refusal to provide Plaintiff with reasonable accommodations for his auditory disability.

45.     During Plaintiff's senior phase at Fullstack Academy, Defendants' refusal to provide Plaintiff with reasonable accommodations worsened.

46.     New instructors were suddenly assigned to the senior phase. The new instructors were unfamiliar with and/or not advised of the protocol for using the microphone and repeating questions to Plaintiff.

47.     Professors and teaching fellows who gave lectures during Plaintiff's senior phase sparingly used Plaintiff's microphone and almost universally failed to repeat student questions.

48.     As part of the senior phase, teaching fellows acted out skits to convey course materials. During the skits, the microphone was not used.

49.     Fullstack ceased recording each lecture. This further compounded the lack of microphone use and lack of repeating student questions during class. Plaintiff was not able to fully review the material as a result.

50.     Fullstack assigned students to groups of 3 or 4 students to participate in the Grace Shopper project. Students had no input regarding who was assigned to their group. Plaintiff's Grace Shopper group was compromised of four students. One member of the group had a German accent, a second member had a heavy Korean accent, and the teaching fellow assigned to the group had a heavy French accent. Plaintiff found it extremely difficult to communicate with or understand the group. Ironically, Plaintiff's group peers relied on Plaintiff for project assistance because he was the stronger programmer in the group. Plaintiff's time commitment to the program increased due to the extra time he spent tutoring others.

51.     Plaintiff complained to Foust and Lebec about the deficiencies in his Grace Shopper project and his overall frustration with the decrease in accommodations in the program. Neither Foust or Lebec offered any solution to Plaintiff for these deficiencies.

52.     During the Stackathon project, students were required to make solo presentations. Plaintiff's anxiety became near debilitating on the morning of his project. Feeling immense pressure to complete the project in order to graduate, Plaintiff made his presentation. However, Plaintiff suffered a severe anxiety/panic attack, which was witnessed by at least three faculty

members. Indeed, Plaintiff was forced to take his prescribed emergency medication to mitigate the unyielding symptoms of this attack and was forthright in fully disclosing this to Defendants.

53.   Unlike Plaintiff, there were three students that did not make presentations. Upon information and belief, those students still graduated at the end of the program.

54.   In March 2018, Fullstack instructors were still using the microphone inconsistently during class discussions. Plaintiff missed out on relevant course material due to the instructors' failure to consistently use the microphone.

55.   With only one final project left, i.e. Capstone, Plaintiff felt that he should press on and complete the program.

56.   Unlike Plaintiff, the two other project members in Capstone had a different approach to the project and did not focus on practicing the presentation. One of the members was traveling and not physically present or able to complete his third of the project by the time the group was scheduled for their final practice of the presentation on Friday, March 30.

57.   On the day of the first practice presentation, Thursday, March 29, Plaintiff experienced a severe panic attack due to the status of the Capstone project. Foust observed Plaintiff's panic attack in his office as he attempted to console Plaintiff until he calmed down.

58.   Plaintiff's Capstone team completed their third practice presentation on March 30, but they received negative reviews.

59.   The team was scheduled to make their presentation the following Monday, April 2. The pressure was mounting, and Plaintiff experienced another severe panic attack over the weekend. Plaintiff's panic attack became debilitating.

60.   That Saturday, March 31, Plaintiff wrote to his Capstone team, Foust, Lebec and another Fullstack instructor to advise everyone that he was having a psychological breakdown

requiring emergency medical attention, and that he was not confident he could participate in the presentation on April 2.

61.     Foust and Lebec advised Plaintiff that if he did not appear for the presentation on April 2, he would not graduate. This final determination by Foust and Lebec was made in spite of Plaintiff explicitly advising them that he was in serious trouble psychologically and needed to check himself into the hospital.

62.     During this correspondence, for the first time, Lebec referenced unspecified complaints about Plaintiff's conduct in the program and threatened, "the next thing that occurs, you'll be kicked out of school."   This threat contravened Fullstack's probation policy, which states in relevant part: "If a student's conduct or academic progress falls below an acceptable level at any time while enrolled at Fullstack, a performance improvement plan will be enforced to help the student improve…Participation in the performance improvement plan program is a second chance. If student performance in subsequent projects and assessments does not improve to passing, we reserve the right to dismiss the student from the course."

63.     In the same communication, Lebec admitted that there were no student complaints against Plaintiff thus far. Nevertheless, Plaintiff felt pressured into appearing for the presentation despite his mental disability.

64.     Lebec suggested that they continue the conversation on Monday due to the fact that it was Easter Sunday. However, Lebec never resumed the discussion and failed to provide any details about the unspecified complaints.

65.     On Monday, April 2, Plaintiff arrived for the Capstone presentation and was still in the throes of his mental breakdown. When his team members approached him, Plaintiff was unable to meaningfully respond other than to ask to be left alone.   Plaintiff immediately left the

area in search of a quiet place. He found an empty office and closed the door. A few minutes later, Plaintiff looked up and realized that an unknown man had entered the office. In light of this, Plaintiff left the office.

66.     Upon Plaintiff's return to the main campus floor, Plaintiff was approached by a Fullstack staff member. The staff member advised Plaintiff to go to the main office. In the main office, a female program manager requested that Plaintiff give back his "access card" to campus and asked Plaintiff to leave the premises. Plaintiff is unable to access Fullstack's campus without his access card. Foust confirmed that Plaintiff was being "released" from the program. Plaintiff's "release" from the program was a de facto expulsion. Fullstack never provided reasons for Plaintiff's cursory expulsion from the program. Thus, it appears that Defendants' threat of expulsion superseded Plaintiff's actual need for medical attention.

67.     Based on the rapid timing of this release, upon information and belief, the Defendants had already coordinated their plan to expel Plaintiff, with the incorrect premise, that Plaintiff would not appear for his presentation. Since Plaintiff did appear, Defendants expedited their planned expulsion by forcibly removing Plaintiff from the building with an unnecessary and humiliating police escort. In point of fact, after being told of his release/de-facto expulsion, Plaintiff attempted to leave Fullstack on his own accord, but instead faced escalated circumstances caused by Defendants, who acted in a concerted manner meant to exacerbate Plaintiff's emotionally compromised state of severe panic and anxiety.

68.     Despite Plaintiff's de-facto expulsion by Defendants prior to the final Capstone project, Plaintiff had already met all of his clock hour requirements for completion of the program. Indeed, Plaintiff was a top-tier student at Fullstack, averaging between 103% - 106% on all tests and assignments. However, Plaintiff did not receive a Certificate of Completion.

69.     On or about April 9, 2018, Yang confirmed that Plaintiff met and exceeded all academic requirements for graduation. Yang wrote to Plaintiff: "I can provide you a certificate of completion and personally serve as a reference for you during your job search."

70.     Additionally, Yang agreed to restore Plaintiff's access to workshops, lecture videos, career success lectures, mock interviews, and ordinary Fullstack alumni benefits. The following represents a non-exhaustive list of Fullstack alumni benefits: (i) participation in job fairs; (ii) alumni networking and networking events; (iii) Asana job search tool; (iv) access to Slack, including chat logs and other official communications; and (v) lifetime career success access that all Fullstack students receive upon graduation.

71.     Despite Yang's promise, Yang did not provide a Certificate of Completion for Plaintiff and has failed to serve as a reference for Plaintiff's job search.  Yang did not restore Plaintiff's access to ordinary Fullstack alumni benefits and withheld educational material from Plaintiff. Plaintiff was deprived of lectures during the final week of the program, mock interviews with professional career coaches, and access to post-graduation benefits/support from career success, including the tools within Asana.com.

72.     Fullstack intentionally interfered with Plaintiff's employment opportunities. Fullstack made disparaging and defamatory statements against Plaintiff to Fullstack employees and students. Fullstack ceased all communication with Plaintiff.

## AS AND FOR A FIRST CAUSE OF ACTION
### Violation of Americans with Disabilities Act

73.     Plaintiff repeats and realleges each and every allegation hereinabove as if fully set forth herein.

74.     Plaintiff is an individual with a disability and, as such, is protected by the Americans with Disabilities Act.

75.     Defendants, including Yang and Lebec, were aware of Plaintiff's substantial hearing disability and mental health disability, but refused to provide Plaintiff with reasonable accommodations.

76.     Defendants, including Lebec, failed to repeat student questions or consistently use the microphone, ignored Plaintiff's requests for repetition, failed to record each lecture, and failed to provide adequate closed captioning for lecture videos.

77.     Defendants, including Lebec, were advised of Plaintiff's psychological breakdown requiring emergency medical attention, and that Plaintiff was unable to participate in his final presentation on April 2.

78.     Despite Fullstack's rescheduling policy, Defendants, including Lebec, advised Plaintiff that if he did not appear for the presentation on April 2, he would not graduate.

79.     Despite Fullstack's probation policy, Defendants, including Lebec, threatened to expel Plaintiff from the program based on unspecified and undocumented complaints about Plaintiff's conduct.

80.     Plaintiff requested that Defendants make reasonable accommodations due to his substantial hearing disability and mental health disability, and Defendants willfully refused.

81.     Ultimately, Plaintiff was dismissed from Fullstack because of his disabilities, in willful violation of the Americans with Disabilities Act.

82.     Defendants' acts and omissions aforesaid were motivated by discriminatory animus and ill will due to Plaintiff's disabilities.

83.     The reasons afforded by Defendants for Plaintiff's dismissal from Fullstack were pretextual.

84.     Upon information and belief, three non-disabled students were allowed to graduate from the program, notwithstanding their failure to complete all graduation requirements.

85.     Plaintiff failed to receive a Certificate of Completion, and has been deprived of invaluable networking, alumni connections, and job placement opportunities. Plaintiff was also deprived of access to workshops, lecture videos, career success lectures, mock interviews, and ordinary Fullstack alumni benefits.

86.     As a result of Defendants' unlawful violations of the Americans with Disabilities Act, Defendants must be ordered to confer upon Plaintiff a Certificate of Completion and restore Plaintiff's eligibility to benefit from Fullstack's invaluable networking, alumni connections, and job placement opportunities. Defendants must be ordered to restore Plaintiff's access to workshops, lecture videos, career success lectures, mock interviews, and ordinary Fullstack alumni benefits.

87.     Plaintiff is also entitled to recover the costs of this lawsuit, including his reasonable attorneys' fees.

### AS AND FOR A SECOND CAUSE OF ACTION
### Violation of New York State Human Right's Law

88.     Plaintiff repeats and realleges each and every allegation hereinabove as if fully set forth herein.

89.     Plaintiff is an individual with a disability, and, as such, is a covered individual under New York State Human Rights Law (N.Y. Executive Law §§ 290 et seq.).

90.     Defendants' acts and omissions were based upon impermissible discrimination based upon the fact that Plaintiff was an individual with disabilities which affected major life activities, such as the ability to attend school.

91.     Based upon the foregoing, Defendants discriminated against Plaintiff in the terms, conditions, and privileges of his school attendance, and the rights and privileges contained therein, in violation of New York State Human Rights Law by discriminating against Plaintiff because of his disabilities.

92.     Plaintiff failed to receive a Certificate of Completion, and has been deprived of invaluable networking, alumni connections, and job placement opportunities.

93.     As a direct and proximate result of this conduct, Plaintiff has suffered, and continues to suffer, physical and psychological harm, emotional distress, embarrassment, humiliation, damage to his reputation, and other damages in an amount to be proven at trial.

## AS AND FOR A THIRD CAUSE OF ACTION
## Violation of New York City Human Right's Law

94.     Plaintiff repeats and realleges each and every allegation hereinabove as if fully set forth herein.

95.     Plaintiff is an individual with a disability, and, as such, is a covered individual under New York City Human Rights Law (N.Y. City Administrative Code §§ 8-101, et seq.).

96.     Defendants' acts and omissions were based upon impermissible discrimination based upon the fact that Plaintiff was an individual with disabilities which affected major life activities, such as the ability to attend school.

97.     Based upon the foregoing, Defendants discriminated against Plaintiff in the terms, conditions, and privileges of his school attendance, and the rights and privileges contained therein, in violation of New York City Human Rights Law by discriminating against Plaintiff because of his disabilities.

98.     As a direct and proximate result of this conduct, Plaintiff has suffered, and continues to suffer, physical and psychological harm, emotional distress, embarrassment, humiliation, damage to his reputation, and other damages in an amount to be proven at trial.

99.     Plaintiff failed to receive a Certificate of Completion, and has been deprived of invaluable networking, alumni connections, and job placement opportunities.

100.    Defendants acted with intent to discriminate against Plaintiff's protected civil rights, for which Plaintiff is entitled to an award of punitive damages in an amount to be proven at trial.

101.    Plaintiff is also entitled to recover the costs of this lawsuit, including his reasonable attorneys' fees.

### AS AND FOR A FOURTH CAUSE OF ACTION
### Breach of Contract

102.    Plaintiff repeats and realleges each and every allegation hereinabove as if fully set forth herein.

103.    A contractual relationship existed between Plaintiff and Fullstack at all relevant times hereto.

104.    Fullstack was required to act in accordance with its policies, as outline in Fullstack's January 11, 2016 Catalog.

105.    The Policies provide that Fullstack's "campus is fully ADA (The Americans with Disabilities Act) compliant."  Based on the foregoing allegations, Fullstack did not comply with its obligations pursuant to the ADA.

106.    The Policies provide that "Certificates of Completion are issued to students who meet clock hour requirements." Although Plaintiff met his clock hour requirements, Fullstack failed to provide Plaintiff with a Certificate of Completion.

107.    The Policies outline Fullstack's probation policy, which states in relevant part: "If a student's conduct or academic progress falls below an acceptable level at any time while enrolled at Fullstack, a performance improvement plan will be enforced to help the student improve…Participation in the performance improvement plan program is a second chance. If student performance in subsequent projects and assessments does not improve to passing, we reserve the right to dismiss the student from the course."

108.    Defendants did not follow Fullstack's probation policy when dismissing Plaintiff from the program. Plaintiff was never given a "performance improvement plan," and Defendants admitted there were no complaints against Plaintiff.

109.    The Policies provide that "[i]f a student needs to reschedule an assessment or project due date, he/she must have permission from the Academic Director prior to the due date. A student who misses the assessment or final project will receive a zero unless he/she provides documentation of an emergency or circumstance that made it not possible for the student to be present."  In light of Plaintiff's mental breakdown, Defendants' failure to provide Plaintiff with an alternative date for his Capstone presentation violated the Policies.

110.    Based on the foregoing, Defendants have materially breached their contractual relationship with Plaintiff by failing to comply with its obligations, standards, policies and procedures set forth in the January 11, 2016 Catalog.

111.    As a direct and foreseeable consequence of these breaches, Plaintiff sustained tremendous damages, including, without limitation, loss of educational and career opportunities, reputational damages, economic injuries and other direct and consequential damages. Plaintiff failed to receive a Certificate of Completion, and has been deprived of invaluable networking, alumni connections, and job placement opportunities.

112.    Plaintiff is entitled to recover damages for Defendants' breach of their contractual obligations described above.

113.    As a direct and proximate result of this conduct, Plaintiff has suffered, and continues to suffer, physical and psychological harm, emotional distress, embarrassment, humiliation, damage to his reputation, and other damages in an amount to be proven at trial.

**AS AND FOR A FIFTH CAUSE OF ACTION**
**Breach of Implied Covenant of Good Faith and Fair Dealing**

114.    Plaintiff repeats and realleges each and every allegation hereinabove as if fully set forth herein.

115.    A covenant of good faith and fair dealing is implied in every contract and contractual relationship in the State of New York.

116.    Defendants covenanted that its institution was ADA compliant and failed to provide reasonable accommodations to Plaintiff for his hearing disability, failed to properly implement their purported accommodations for Plaintiff's hearing disability (i.e., failing to pass the microphone around during class times, failure to repeat questions posed by class members, and failures in the closed captioning on required class videos), failed to provide reasonable

accommodations for Plaintiff's mental health issues, and failed to provide him with an alternative date for his Facebook Live presentation (even though the Catalog also implies on page 21 that Fullstack will entertain student requests to reschedule assignment or project due dates).

117.    Defendants' actions, as set forth in full above, violate the implied covenant of good faith and fair dealing.

118.    Plaintiff endured substantial hardship during the program due to Defendants' repeated failure to comply with the ADA. Plaintiff sustained emotional distress, reputational harm, and failed to receive a Certificate of Completion. Plaintiff has been deprived of invaluable networking, alumni connections, and job placement opportunities.

119.    As a direct and proximate result of this conduct, Plaintiff has suffered, and continues to suffer, physical and psychological harm, emotional distress, embarrassment, humiliation, damage to his reputation, and other damages in an amount to be proven at trial.

## AS AND FOR A SIXTH CAUSE OF ACTION
### Promissory Estoppel

120.    Plaintiff repeats and realleges each and every allegation hereinabove as if fully set forth herein.

121.    Defendants promised to provide a campus that is fully ADA-compliant.

122.    Defendants promised to provide Plaintiff with a Certificate of Completion so long as he met the clock hour requirements.

123.    Defendants promised to provide a "performance improvement plan" if a student's conduct or academic progress falls below an acceptable level.

124.    Defendants promised to allow students a second chance to complete the "performance improvement plan" before being dismissed from the program.

125.    Defendants promised to abide by the "key practices" it adopted pursuant to the NYC Tech Talent Pipeline initiative.

126.    Key practices include, but are not limited to, the following: (i) ensure participants have the tools needed to succeed in job searches; (ii) ensure students have access to continued instructional support and personal coaching; (iii) hire at least one experienced social service or other qualified professional to support students through training and help them succeed; (iv) assign one student experience specialist to coordinate amongst all key staff; (v) cultivate a supportive community through cohort-based training to provide a built-in network for networking, hackathons and study groups; (vi) proactively provide targeted support in areas where students are struggling; and (vii) help students gain experience by helping participants secure paid internships, shadowing experiences, hackathons, site visits to tech companies, patriation in tech community and mentoring opportunities.

127.    On or about April 9, 2018, Yang promised to provide Plaintiff with a Certificate of Completion and personally serve as a reference for Plaintiff's job search.

128.    Additionally, Yang agreed to restore Plaintiff's access to workshops, lecture videos, career success lectures, mock interviews, and ordinary Fullstack alumni benefits. The following represents a non-exhaustive list of Fullstack alumni benefits: (i) participation in job fairs; (ii) alumni networking and networking events; (iii) Asana job search tool; (iv) access to Slack, including chat logs and other official communications; and (v) lifetime career success access that all Fullstack students receive upon graduation.

129.    Despite Yang's promise, Yang did not provide a Certificate of Completion for Plaintiff and has failed to serve as a reference for Plaintiff's job search.  Yang did not restore Plaintiff's access to ordinary Fullstack alumni benefits and withheld educational material from Plaintiff. Plaintiff was deprived of lectures during the final week of the program, mock interviews with professional career coaches, and access to post-graduation benefits/support from career success, including the tools within Asana.com.

130.    Plaintiff relied upon Defendants' representations to his detriment.

131.    Plaintiff endured substantial hardship during the program due to Defendants' repeated failure to comply with the ADA. Plaintiff sustained emotional distress, reputational harm, and failed to receive a Certificate of Completion. Plaintiff has been deprived of invaluable networking, alumni connections, and job placement opportunities.

132.    As a direct and proximate result of this conduct, Plaintiff has suffered, and continues to suffer, physical and psychological harm, emotional distress, embarrassment, humiliation, damage to his reputation, and other damages in an amount to be proven at trial.

## DEMAND FOR JURY TRIAL

133.    Plaintiff requests that all matters related to liability and his damages be tried before a jury.

## PRAYER FOR RELIEF

**WHEREFORE**, for the foregoing reasons, Plaintiff respectfully requests that this Court grant judgment against Defendants, and orders relief against the Defendants as follows:

(i)     issue a Certificate of Completion to Plaintiff;

(ii)     restore Plaintiff's eligibility to benefit from Fullstack's invaluable networking, alumni connections, and job placement opportunities;

(iii)     restore Plaintiff's access to workshops, lecture videos, career success lectures, mock interviews, and ordinary Fullstack alumni benefits;

(iv)     an award of damages in an amount to be determined at trial, plus prejudgment interest, to compensate Plaintiff for all monetary and/or economic damages, including but not limited to, physical and psychological harm, emotional distress, embarrassment, humiliation, and damage to his reputation;

(v)     an award of punitive damages, in an amount to be determined at trial;

(vi)     an award of reasonable attorneys' fees and the costs of this action; and

(vii)     such other and further relief as the Court deems just, equitable and proper.


Dated: New York, New York
       September 4, 2018

                                    **WARSHAW BURSTEIN, LLP**
                                    *Attorneys for Plaintiff*


                              By: _____
                                        Kimberly C. Lau
                                    555 Fifth Avenue
                                    New York, New York 10017
                                    (212) 984-7700
                                    klau@wbny.com